Jeffrey E. McCANN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 18, 1990.
Decided: March 22, 1991.

Kenneth E. Fink, Ferry & Fink, Wilmington, for appellant.

Gary A. Myers (argued), Dept. of Justice, Wilmington, and Thomas E. Carluccio, for appellee.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., Constituting the Court en Banc.

MOORE, Justice.

The appellant, Jeffrey E. McCann ("McCann"), was arrested for driving under the influence of alcohol ("DUI"). Following his arrest, McCann was forced to submit to a blood alcohol test after police subdued him by use of a "stun" gun.[1] McCann, moved to suppress this evidence, contending that the blood sample taken from his body was drawn illegally and in violation of his constitutional rights. After an evidentiary hearing, the trial judge denied McCann's motion, and the jury found McCann guilty of DUI.

McCann's appeal presents two issues: (1) whether the Superior Court abused its discretion in finding that the arresting officer did not advise McCann of his option to have his license revoked rather than submit to a blood test, thereby invoking the implied consent laws; and (2) whether the Superior Court erred as a matter of law in failing to suppress blood test results obtained through the use of allegedly unnecessary and unreasonable force. On this record we find no merit to the appellant's claims, and affirm.

I.

On November 27, 1988, McCann was stopped by Sergeant Tobin of the New Castle County Police. Tobin noticed a strong odor of alcohol coming from McCann's truck. He requested McCann's license and registration, which McCann could not produce. Tobin then called a DUI car to the scene to perform a series of field tests on McCann, all of which he failed. The DUI patrolman, Charles A. Wilson, Jr., then arrested McCann, patting him down and handcuffing him for the trip

---

1. A stun gun is a weapon that produces .00006 of an amp of electricity that can be used to cause muscle contractions and a resulting loss of balance. Powered by a nine volt battery, the stun gun causes disorientation.

back to New Castle County Police Headquarters.

At the police headquarters McCann's record showed that he had a previous DUI conviction. McCann refused to undergo a breath test, answer a questionnaire, and sign a Division of Motor Vehicle form. Wilson, therefore, decided to take him to the Christiana Hospital for a blood test. At the hospital McCann refused to undergo the blood test, and a struggle ensued in which Wilson and the technician tried to hold McCann's arm down so that a sample could be taken. Each attempt to hold down McCann's arm ended with him withdrawing his arm. On the third attempt, McCann attempted to bite Wilson. This prompted Wilson to use a stun gun on McCann's arm. After the stun gun was applied, McCann's arm went limp and the technician was able to draw a blood sample. McCann's blood tested positive for alcohol at a level of .24, well above the .10 proscribed by 21 Del.C. § 4177.

## II.

We first address McCann's argument that the Superior Court abused its discretion in finding that Officer Wilson did not advise McCann of his option to have his license revoked rather than submit to a blood test. McCann contends that under 21 Del.C. § 2742(a), he had the ability to bar Officer Wilson from administering a blood alcohol test. McCann states that Officer Wilson informed him of his option to either submit to a blood test or lose his license for a year. McCann contends that after he exercised his option not to consent to the blood test, Section 2742(a) prohibited Officer Wilson from pursuing the test.

The relevant Delaware statute provides in part:

If a person refuses to permit chemical testing, after being informed of the penalty of revocation for such refusal, the test shall not be given but the police officer shall report the refusal to the Department. The police officer may, however, take reasonable steps to conduct such chemical testing even without the consent of the person if he seeks to conduct such test or tests without informing the person of the penalty of revocation for such refusal and thereby invoking the implied consent law. 21 Del.C. § 2742(a).

According to the statute, a person suspected of DUI has no right to refuse chemical testing unless a police officer informs him that he may lose his license for a year if he withholds consent. Id. See also 21 Del.C. § 2740 (police may administer test if they have probable cause to suspect person intoxicated within meaning of statutes); Brank v. State, Del.Supr., 528 A.2d 1185, 1189–90 (1987). It thus becomes crucial whether a police officer in a given case has "invoked" the implied consent statute by informing a suspect of the possibility that his license may be revoked if he refuses to submit to chemical testing.

The trial court found that the police officer did not invoke the implied consent laws. Although McCann testified that Wilson told him that he could lose his license for refusing to take a blood test, Wilson denied making such a statement. In reviewing findings of fact, this Court is bound by the findings below unless the challenging party shows they lack any support in the record. State v. Rooks, Del.Supr., 401 A.2d 943, 949 (1979). The testimony here was conflicting, but there was support for the trial court's finding. The trial judge was in the best position to assess the credibility of the witnesses, and under the circumstances of this record his findings and conclusions will not be overturned.

## III.

McCann also argues that the Superior Court erred as a matter of law in failing to suppress the blood test results based on what McCann believes was unnecessary and unreasonable force used to obtain his blood sample. He argues, specifically, that use of the stun gun violated 21 Del.C. § 2742(a), which authorizes police only to "take reasonable steps to conduct such chemical testing."

Any person who operates a motor vehicle in Delaware is deemed to have given his

consent to submit to a blood alcohol test. 21 *Del.C.* § 2740.[2] The only apparent limit to this implied consent is that the officer "take reasonable steps to conduct such chemical testing." 21 *Del.C.* § 2742(a). Under 21 *Del.C.* § 2750(a), the failure to inform an individual of the implied consent law does not affect the admissibility of evidence that would "otherwise be admissible under the law relative to search and seizure law."

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court noted that the police were entitled to take blood from a suspected drunk driver without a warrant and based on probable cause unless the "police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." *Id.* at 760 n. 4; 86 S.Ct. at 1830. The Court refined *Schmerber's* "reasonableness" test in *Winston v. Lee*, 470 U.S. 753, 761–63, 105 S.Ct. 1611, 1617–18, 84 L.Ed.2d 662 (1985), when it clarified three relevant factors originally cited in *Schmerber* to determine whether the government can introduce evidence obtained through medical procedures requiring a bodily intrusion. The *Winston* factors consider: (1) the extent to which the procedure may threaten the safety or health of the individual; (2) the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity; and (3) the community's interest in fairly and accurately determining guilt or innocence. *Id.* at 761–62, 105 S.Ct. at 1617.

The question of what constitutes reasonable force has not been fully addressed in any previous Delaware case involving blood tests. However, other courts have allowed officers to subdue suspects and force them to take blood tests, when the force used was much more life threatening than in the present case. In *State v. Lanier*, S.D. Supr., 452 N.W.2d 144 (1990), the South Dakota Supreme Court upheld the admissi-

bility of a blood test when five or six officers restrained a DUI suspect while blood was being withdrawn. *Id.* at 146–47. Similarly, in *Carleton v. Superior Court*, 170 Cal.App.3d 1182, 216 Cal.Rptr. 890, 892–96 (1985), the California Appeals Court upheld the admission of chemical analysis results of a blood sample procured after six police officers restrained a DUI suspect with a carotid hold around his neck. *Id.* 216 Cal. Rptr. at 894. In both cases the suspects had been aggressive, and the courts ruled that under the totality of the circumstances, the force used was reasonable. *Lanier*, 452 N.W.2d at 147; *Carleton*, 216 Cal.Rptr. at 896.

■ Thus, we turn to the question whether the force used to take McCann's blood was reasonable. With respect to the arm wrestling, the officer did not threaten McCann's safety or health by holding his arm down, and *Schmerber* already determined that the intrusion of a blood test was minimal, particularly in light of the strong societal interest in highway safety. 384 U.S. at 770–72; 86 S.Ct. at 1836. Accordingly, it was reasonable under the foregoing circumstances to hold McCann's arm down to take his blood. The amount of force used survives *Schmerber's* tripartite test as explained in *Winston*, and is factually similar to the South Dakota Supreme Court's ruling in *Lanier*.

McCann contends that the stun gun was used to compel compliance with the officer's request for a blood sample, rather than in the officer's self-defense. The trial court rejected that claim and, under our standard of review, we perceive no basis to disagree with that factual finding. Our holding today, however, is not to be construed as authorizing the use of a stun gun, or the threat of such use, to compel submission to a blood test, in the absence of physical aggression on the part of a detainee which would otherwise independently justify such force. We thus reject

---

**2.** Under a prior version of Delaware's implied consent law, the State could not use the results of a blood test as evidence at a DUI trial without the defendant's prior consent unless the defen-

dant was arrested prior to the testing. *See Bertomeu v. State*, Del.Supr., 310 A.2d 865, 866 (1973).

McCann's statutory and constitutional argument that the force was unreasonable.

Accordingly, the judgment of the Superior Court is AFFIRMED.