# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FREDDIE FLONNORY, | § | |
| | § | No. 156, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | ID No. 12909005937 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: January 05, 2015
Decided: January 28, 2015


Before **STRINE**, Chief Justice, **HOLLAND**, **RIDGELY**, **VALIHURA**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court.  **REMANDED**.


Patrick J. Collins, Esquire, Wilmington, Delaware, Albert J. Roop, Esquire (*argued*), Wilmington, Delaware, for Appellant.

Karen V. Sullivan, Esquire (*argued*), Department of Justice, Wilmington, Delaware, for Appellee.

**RIDGELY**, Justice, for the Majority:

Defendant-below/Appellant Freddie Flonnory ("Flonnory") appeals from a conviction in the Superior Court of felony Driving Under the Influence of Alcohol ("DUI"), under 21 *Del. C.* § 4177(a) and (d)(3). Specifically, Flonnory challenges the Superior Court's denial of his motion to suppress the results of a blood draw. Flonnory raises two claims on appeal. First, Flonnory contends that the trial court erred in holding that Delaware's implied consent statute, 21 *Del. C.* § 2740(a), exempted the blood draw from the Fourth Amendment's warrant requirement. Second, Flonnory contends that there was no voluntary consent, and that the trial court erred when it did not perform a Fourth Amendment totality of the circumstances analysis to determine whether Flonnory had in fact consented to the blood draw.

By its very nature, a blood draw is an intrusion into the human body that is fundamentally different from a breath sample.[1] The General Assembly has acknowledged that the "normal rules of search and seizure law" apply in this context.[2] And the normal rules require a search warrant for a blood draw absent a recognized exception to the warrant requirement.

---

[1] *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 625 (1989) ("Unlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment.").
[2] 21 *Del. C.* § 2750(a).

When the State relies upon the consent exception to the warrant requirement to admit a chemical test of a blood draw, a Fourth Amendment totality of the circumstances analysis applies. Such an analysis was not applied in this case by the Superior Court. Accordingly, we remand this matter for further proceedings consistent with this Opinion.

## I.    Facts and Procedural History[3]

On September 8, 2012, Delaware State Police Corporal Andrew Pietlock ("Cpl. Pietlock") pulled over Flonnory's automobile after he observed Flonnory twice fail to signal during a turn. Cpl. Pietlock approached the driver's side of Flonnory's vehicle, where he immediately noticed that Flonnory's eyes were glassy and bloodshot. Cpl. Pietlock also observed an open beer bottle in the vehicle, and smelled the odor of alcohol on Flonnory's breath. When Cpl. Pietlock asked Flonnory how much he had to drink that night, Flonnory admitted to having one beer in addition to the beer seen in his vehicle.

Based on his observations, Cpl. Pietlock suspected Flonnory was intoxicated, and administered several field sobriety tests. Flonnory failed the field sobriety tests he was asked to perform.[4] Cpl. Pietlock then requested that Flonnory take a Portable Breath Test ("PBT"). When Flonnory asked whether he had to take

---

[3] Unless otherwise noted, the facts and procedural history are taken directly from the Superior Court's Order denying Flonnory's motion to suppress. *See State v. Flonnory*, 2013 WL 3327526 (Del. Super. 2013).

[4] Flonnory "failed the alphabet, numbers, one-leg stand, and heel-to-toe-tests." *Id.* at *2.

the PBT, Cpl. Pietlock informed Flonnory that he did not have to take "any test," but that if he did not take the PBT, he would be arrested for DUI. Despite being informed of his right to refuse, Flonnory took the PBT. The PBT was administered at 10:02 p.m., at which time the device indicated that Flonnory's blood alcohol concentration was 0.163, over twice the legal limit. Cpl. Pietlock arrested Flonnory for suspicion of DUI.

Flonnory was transported to the police station, where he was advised that a phlebotomist was going to conduct a blood draw. Cpl. Pietlock did not ask Flonnory for permission nor did he request a search warrant for authority to draw Flonnory's blood.[5] At 11:36 p.m., Flonnory's blood was drawn by the phlebotomist. During the blood draw, Flonnory told the phlebotomist "that's a good vein, don't miss it."[6] Flonnory's blood was analyzed by the Delaware State Police Crime Lab, which found a blood alcohol concentration of 0.14.

On October 22, 2012, Flonnory was indicted on one count for DUI and one count for Failure to Use Turn Signal.[7] In December 2012, Flonnory filed a motion to suppress the results of the blood draw, claiming that the blood draw violated his

[5] At oral argument before this Court, the State conceded that it has since instructed law enforcement officers to apply for a search warrant under all circumstances before performing a blood draw. Oral Argument at 28:51, 29:35–30:10, *Flonnory v. State*, No. 156, 2014 (Nov. 19, 2014) ("Post *McNeely*, warrants are being obtained in every instance . . . . Police are not, at this point, relying on the implied consent law."), *available at* http://courts.delaware.gov/supreme/oralarguments/.

[6] *Flonnory*, 2013 WL 3327526, at *2.

[7] (A9) The State entered a *nolle prosequi* on the Failure to Use Turn Signal charge prior to jury selection. (A7)

4

rights under the Fourth Amendment. The trial court held a suppression hearing, but reserved its decision pending the United States Supreme Court's decision in *Missouri v. McNeely*.[8] After *McNeely* was decided, the trial court determined that *McNeely's* holding was inapplicable to Delaware's implied consent statute. Accordingly, the trial court denied Flonnory's motion, and found that Flonnory provided consent under Delaware's implied consent statute simply by driving his vehicle. After a two-day jury trial, Flonnory was convicted of DUI. This appeal followed.

## II. Discussion

A trial court's decision to grant or deny a motion to suppress evidence is reviewed for an abuse of discretion.[9] A trial court's legal decisions are reviewed *de novo*.[10] "'To the extent the trial judge's decision is based on factual findings, we review for whether the trial judge abused his or her discretion in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous.'"[11]

---

[8] *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). In *McNeely*, the Supreme Court held that the natural dissipation of alcohol in a drunk-driving suspect's bloodstream does not constitute a *per se* exigency in every case to justify drawing the suspect's blood for testing without a warrant or the suspect's consent. *Id.* at 1558. *McNeely* states that whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances. *Id.* at 1563.

[9] *McVaugh v. State*, 2014 WL 1117722, at *1 (Del. 2014) (citing *Lopez-Vazquez v. State*, 956 A.2d 1280, 1284 (Del. 2008)).

[10] *Id.* (citing *McCallister v. State*, 807 A.2d 1119, 1122–23 (Del. 2002)).

[11] *Id.* (quoting *Lopez-Vazquez*, 956 A.2d at 1284).

The United States and Delaware Constitutions protect the right of persons to be secure from "unreasonable searches and seizures."[12]  Generally, "[s]earches and seizures are *per se* unreasonable, in the absence of exigent circumstances, unless authorized by a warrant supported by probable cause."[13]  In addition to exigent circumstances, a recognized exception to the warrant requirement is for searches that are conducted pursuant to a valid consent.[14]  "Consent may be express or implied, but this waiver of Fourth Amendment rights need not be knowing and intelligent."[15]

A blood draw is fundamentally different from a breath test because it involves an intrusion into the human body.  As the United States Supreme Court explained nearly five decades ago:

> Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.  The requirement that a warrant be obtained is a requirement that inferences to support the search be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.[16]

---

[12] U.S. Const. amend. IV; Del. Const. art. I, § 6.

[13] *Scott v. State*, 672 A.2d 550, 552 (Del. 1996) (citing *Hanna v. State*, 591 A.2d 158, 162 (Del. 1991)).

[14] *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 221–22 (1973)).

[15] *Cooke v. State*, 977 A.2d 803, 855 (Del. 2009) (citing *Schneckloth*, 412 U.S. at 241).

[16] *See Schmerber v. California*, 384 U.S. 757, 769 (1966) (internal citations and quotation marks omitted).

More recently, the Supreme Court has stated that "[s]uch an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'"[17]  This is why a search warrant is required in the absence of exigent circumstances[18] or consent. In order to determine whether consent was given voluntarily, courts examine the totality of the circumstances surrounding the consent, including:

> (1) defendant's knowledge of the constitutional right to refuse consent; (2) defendant's age, intelligence, education, and language ability; (3) the degree to which the individual cooperates with police; and (4) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior.[19]

We have applied this very analysis before in the context of a blood draw. For example, in *Higgins v. State*, Higgins, who was driving intoxicated, was involved in single car accident.[20]  When a Newark police officer arrived at the scene, he observed that Higgins' eyes were bloodshot and glassy, and smelled the odor of alcohol emanating from him.[21]  The officer took Higgins to Christiana Hospital, where he was asked to sign a written consent form so that hospital personnel could draw his blood.[22]  When Higgins refused, the officer called a

---

[17] *McNeely*, 133 S. Ct. at 1558 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).

[18] The trial court found no exigent circumstances in this case.  *Flonnory*, 2013 WL 3327526, at *5.

[19] *McNeely*, 133 S. Ct. at 1558 (citing *Schneckloth*, 412 U.S. at 241).

[20] *Higgins v. State*, 2014 WL 1323387, at *1 (Del. Apr. 1, 2014).

[21] *Id.*

[22] *Id.*

phlebotomist to come to the hospital to draw Higgins' blood.[23]  While waiting for

the phlebotomist, the officer told Higgins that if he refused the blood draw, he

would lose his driver's license for one year, and also admonished Higgins that "he

was lucky that he hadn't hit a kid that day."[24]  Higgins, eventually stated "fine, I'll

give blood," and cooperated while the phlebotomist drew his blood.[25]  The blood

draw revealed Higgins' blood alcohol concentration to be 0.20.[26]

Higgins was arrested and indicted for felony DUI.  Thereafter, he moved to

suppress the blood draw results, claiming that his consent was not given

voluntarily due to the officer's (i) calling a phlebotomist after he had refused to

sign a hospital consent form to the blood draw, (ii) (possibly) telling the defendant

that he would lose his license if he did not consent, and (iii) admonishing Higgins

for his dangerous conduct.[27]  The trial court denied the motion, and found that,

under the totality of the circumstances, Higgins had voluntarily consented to

having his blood drawn.  On appeal, we affirmed the trial court's ruling.  In so

doing, we reviewed the totality of the circumstances as found by the trial court, and

explained:

> [T]he totality of the circumstances establishes that Higgins
> voluntarily consented to the blood draw.  Because this

---

[23] *Id.*
[24] *Higgins*, 2014 WL 1323387, at *1.
[25] *Id.*
[26] *Id.*
[27] *Id.* at *2.

constituted his third DUI offense, Higgins was not an ignorant newcomer to the law. No argument is made that Higgins' age, intelligence, or education precluded his voluntary consent. And, [the officer's] testimony shows that Higgins was generally cooperative with police . . . . Fourth Amendment jurisprudence does not forbid a law enforcement officer from attempting to persuade an individual to consent to a search. Finally, calling the . . . phlebotomist did not cause Higgins to acquiesce[] to a claim of lawful authority. Neither [the arresting officer] nor the phlebotomist represented that they had authority to draw Higgins blood without his consent. Given the totality of the circumstances, Higgins voluntarily consented to the blood draw.[28]

Notwithstanding this precedent, the State argues that a Fourth Amendment analysis was not required here. We disagree.

The General Assembly has acknowledged that "the normal rules of search and seizure law" apply in determining the admissibility of a chemical test in "any action or proceeding arising out of acts alleged to have been committed by any person while under the influence of alcohol."[29] A chemical test of a person's blood is one of the ways the State may prove driving under the influence.[30] The procedure involves "a compelled physical intrusion beneath [one's] skin and into [one's] veins to obtain a sample" of blood.[31] Due to the invasive nature of this procedure, a Fourth Amendment totality of the circumstances analysis must be performed when the search is not based upon a warrant or exigent circumstances in

---

[28] *Id.* at *2–3 (internal quotation marks omitted).
[29] 21 *Del. C.* § 2750(a).
[30] 21 *Del. C.* § 4177.
[31] *Id.*

order to determine whether a defendant voluntarily consented to the blood draw.[32]

Here, the trial court erred when it concluded that "Defendant's statutory implied consent exempted the blood draw from the warrant requirement"[33] of the Fourth Amendment.

The State argues in the alternative that the totality of the circumstances show that Flonnory voluntarily consented to the blood draw. As we have noted above, express or implied consent may waive Fourth Amendment rights. Whether this in fact occurred here under the totality of the circumstances is a determination we choose not to make for the first time on appeal. The trial court should determine in the first instance whether Flonnory consented, either expressly or impliedly, to the blood draw. Accordingly, we remand this matter so that the trial court may conduct a proper Fourth Amendment analysis. If the trial court determines, after considering the totality of the circumstances, that the consent exception to the warrant requirement does not apply, it is instructed to grant the motion to suppress, vacate the conviction, and to grant a new trial.

We respectfully disagree with the very thoughtful Dissent. The Dissent focuses on the Supreme Court's decision in *McNeely*, and concludes that it has no

---

[32] Our holding is consistent with recent decisions of other State Supreme Courts. *See State v. Fierro*, 853 N.W.2d 235, 243 (S.D. 2014) (ruling that a Fourth Amendment totality of the circumstances analysis must be performed to determine whether consent to a blood draw was voluntary); *State v. Wulff*, 337 P.3d 575, 581 (Idaho 2014) (same); *Byars v. State*, 336 P.3d 939, 942 (Nev. 2014) (same); *State v. Butler*, 232 Ariz. 84, 87 (Ariz. 2013) (same).
[33] *Flonnory*, 2013 WL 3327526, at *6.

application to the facts of this case. We recognize that the Court in *McNeely* did not expressly address the issue of consent. Nevertheless, its reasoning—derived from *Schmerber v. California*[34]—is directly applicable to the facts of this case. We agree that Delaware's implied consent statute, as stated by the Supreme Court, remains a "legal tool[] to enforce [Delaware's] drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws."[35] But the Supreme Court explained in *McNeely* that, "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances."[36]

The Dissent expresses concern that requiring police to obtain a warrant before performing a blood draw "would burden police officers and courts with the need to secure a large number of warrants, taking scarce police and judicial time away from other matters." To the extent this is an extra step, the Delaware Department of Justice has already instructed law enforcement to take it using the technology available here.[37] As noted by the Supreme Court in *McNeely*, this argument on burden fails to account for technological advances "that allow for the more expeditious processing of warrant applications, particularly in contexts like

---

[34] *Schmerber*, 384 U.S. at 769 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.").

[35] *McNeely*, 133 S. Ct. at 1566.

[36] *Id.* at 1563.

[37] *See* footnote 5, *supra*.

drunk-driving investigations where the evidence offered to establish probable cause is simple."[38]

### *III.    Conclusion*

This matter is **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction is not retained.

---

[38] *McNeely*, 133 S. Ct. at 1561–62.  The Dissent also posits in footnote 69 that Delaware's implied consent statute for a chemical test of breath, blood, or urine has a corporate analogue in 8 *Del. C.* § 3114, which relates to personal jurisdiction.  Section 3114 is not at issue here.  We have expressly upheld the constitutionality of Section 3114 in *Armstrong v. Pomerance*, 423 A.2d 174, 177 (Del. 1980), and nothing in our Opinion today is intended to overrule that decision or affect the scope of Section 3114's enforceability.

**STRINE**, Chief Justice, dissenting:

I respectfully dissent. In my view, the Superior Court grappled correctly with the precise question presented to it by the parties below: whether the U.S. Supreme Court's decision in *Missouri v. McNeely*[39] rendered Delaware's statutory implied consent statute invalid. After receiving supplemental briefs on that issue, the Superior Court determined that the Supreme Court in *McNeely* only addressed the question properly before it, namely "whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations."[40] The Superior Court concluded that *McNeely* did not speak to the separate question of whether the consent exception to the Fourth Amendment was satisfied by statutes like Delaware's. Indeed, the Superior Court noted that to the extent the Court discussed implied consent statutes—which exist in some form in every state—it seemed to cite them with approval: "The Court did not make any specific rulings about Missouri's implied consent statute; instead, the Court acknowledged that implied consent statutes are among the 'broad range of legal tools [States have] to enforce their drunk-driving laws and to secure BAC evidence without undertaking nonconsensual blood draws.'"[41] The Superior Court

---

[39] 133 S. Ct. 1552 (2013).

[40] *Flonnory*, 2013 WL 3327526, at *6 (quoting *McNeely*, 133 S. Ct. at 1558).

[41] *Id*. (quoting *McNeely*, 133 S. Ct. at 1566).

thus adhered to this Court's prior decisions holding that Delaware's implied consent statute was consistent with the Fourth Amendment and that the implied consent Flonnory gave by exercising the privilege of driving was valid.[42] In holding that the results of the blood search were admissible in evidence, the Superior Court made the required finding under the statute that the officer who arrested Flonnory had probable cause to believe that he had committed a DUI.[43]

On appeal, the parties joined issue on the question that divided them below. Their briefs took different positions on the effect of *McNeely*, with the State trying to introduce for the first time the alternative argument that Flonnory actually consented to the blood draw. After oral argument, we invited supplemental submissions on the reading given to *McNeely* by other state courts.

With this central question having been exhaustively addressed by the parties and of interest to our law enforcement community, my colleagues have assumed for the sake of decision that *McNeely* silently invalidated our state's long-standing implied consent statute. They then reverse the Superior Court's judgment without explaining how it made an error, and remand for it to make a determination that the parties never previously requested it to make. Both parties will be surprised by the

---

[42] *Id*. ("The Supreme Court's holding in *McNeely* does not alter the application of Delaware's Implied Consent Statutes to the facts of this case . . . . Therefore, *McNeely* does not affect this Court's finding that the results from the blood sample are admissible pursuant to the consent exception to the warrant requirement.").

[43] *Id*. at *7.

14

Majority Opinion, which does not address the issue that the parties argued before the Superior Court or on appeal.

Because I believe Delaware's statutory implied consent statute has safeguards that ensure its reasonable operation consistent with the Fourth Amendment, I dissent. I fear that assuming that *McNeely* undid reasonable implied consent regimes like Delaware's that were operating for many years without any indication of being abused will work no increase in liberty from unreasonable searches, but simply burden police officers and courts with the need to secure a large number of warrants, taking scarce police and judicial time away from other matters. Like the Superior Court, I decline to guess that *McNeely* silently proposed a costly solution to a problem that no one had identified as even existing.

*Missouri v. McNeely* addressed a separate, precise question that is not relevant for our purposes in this case. This Court has recognized the constitutionality of the implied consent statute on multiple occasions, because it relies on a recognized exception to the warrant requirement—consent—and has substantial procedural protections that make the admission of evidence contingent on a judicial finding that the search otherwise complied with the Fourth Amendment. When a person chooses to exercise the privilege to which the consent attaches, *i.e.*, driving on our roads, the statute deems that person to have consented to a search, so long as the statutory precautions are satisfied. *McNeely*

15

did not alter that analysis, because it did not address the long-standing consent exception to the warrant requirement.[44] Rather, as the Superior Court in this case determined based on the language of the opinion itself, *McNeely* solely focused on the separate exigency exception to the warrant requirement.

As we have held on numerous occasions, our statutory scheme is constitutional because it simply attaches a condition to a privilege that no one is required to exercise, which is a permissible legislative determination. The statutory regime also includes substantial safeguards, including the requirement that a judge find that probable cause existed, before the results of a search can be admitted into evidence.

## A.  We Have Held Delaware's Implied Consent Statute to Be Consistent with the Fourth Amendment on Numerous Occasions

In 1960, this Court held in *State v. Wolf* that drawing blood from a person suspected of driving while intoxicated, when that person could not consent, constituted an illegal search.[45] In *Wolf*, the suspect was unconscious, but the police nevertheless drew and tested his blood.[46] This Court recognized the difficulty its holding would create for the police, and suggested that the General Assembly could remedy the problem by enacting a law deeming those who chose to drive on

---

[44] *South Dakota v. Neville*, 459 U.S. 553, 559, 564 (1983) (acknowledging implied consent law did not violate the Fourth or Fifth Amendments).
[45] *State v. Wolf*, 164 A.2d 865, 868 (Del. 1960).
[46] *Id.*

16

Delaware's roads to have consented to blood tests, if there was reason to suspect them of driving under the influence.[47] The General Assembly responded by passing an implied consent statute. The modern form of the statute, 21 *Del. C.* § 2740 *et seq.*, states that:

> Any person who drives, operates or has in actual physical control a vehicle . . . shall be deemed to have given consent . . . to a chemical test or tests of that person's blood, breath and/or urine for the purpose of determining the presence of alcohol or a drug or drugs. The testing may be required of a person when an officer has probable cause to believe the person was driving, operating or in physical control of a vehicle [while intoxicated].[48]

Under the original version of the statute, an officer could not perform the test if the suspect refused. But the General Assembly amended the statute in 1983 to provide that the police may perform tests over a suspect's objections in certain circumstances.[49] Section 2742 states:

> If a person refuses to permit chemical testing, after being informed of the penalty of revocation for such refusal, the test *shall not be given* but the police officer shall report the refusal to the Department. The police officer *may*, however, take reasonable steps to conduct such chemical testing *even without the consent of the person* if the officer seeks to conduct such test or tests without informing the person of the penalty of revocation for such refusal and thereby invoking the implied consent law.[50]

Section 2750 further provides:

---

[47] *Id.*
[48] 21 *Del. C.* § 2740(a).
[49] *Seth v. State*, 592 A.2d 436, 443–44 (Del. 1991).
[50] (emphasis added).

17

[T]he court shall admit the results of a chemical test of the person's breath, blood or urine according to normal rules of search and seizure law. *The informing or failure to inform the accused concerning the implied consent law shall not affect the admissibility of such results in any case*, including a prosecution for a violation of § 4177 or this title.[51]

To put it plainly, in accordance with the statutory scheme, police officers in Delaware, like Yogi Berra, come to and must take a proverbial "fork in the road" when they encounter a driver who they have probable cause to believe is under the influence of alcohol. Under § 2742, a police officer may:

(1)    inform the suspect of the administrative penalties that will ensue for refusing to submit to chemical testing; if the suspect does refuse, the officer cannot then perform the test; **or**

(2)    decline to inform the suspect of the implied consent statute, and perform chemical tests even without explicit consent, provided the amount of force used is not excessive and any blood test is performed by a medical professional.[52]

This has been the law in Delaware for the past three decades, and we have recognized the validity of the implied consent scheme crafted by the General

---

[51] (emphasis added).

[52] 21 *Del. C.* § 2742. The Majority Opinion relies on *Higgins v. State* for the proposition that the totality of the circumstances test is required in all circumstances in which a suspect's blood is tested without a warrant, notwithstanding the implied consent statute. 2014 WL 1323387 (Del. Apr. 1, 2014). But the Majority Opinion fails to grapple with the distinction in the statutory scheme between police officers who have informed suspects of the right to refuse and those who have not. In Higgins' case, the officer did inform him of the penalties for failure to comply, and Higgins' argument rested on the premise that doing so was "coercive." *Id*. at *2. That case, in which there was no discussion of implied consent or § 2740 at all, thus does not aid the Majority Opinion's contentions in this case, in which Flonnory was not informed of his right to refuse or the administrative penalties for doing so.

Assembly on numerous occasions.[53] We held in 1991 in *Seth v. State* that the implied consent statute gave the police the right to perform chemical testing on individuals they had probable cause to suspect had been driving while intoxicated, regardless of their actual consent.[54] In *Seth*, the suspect was arrested on probable cause of DUI, and initially refused to submit to an intoxilyzer.[55] The police officer did not inform him of the implied consent law, and after several minutes, the suspect submitted to the test.[56] The Court held that the suspect's actual consent was immaterial, and noted, "The net effect of the [1983] amendments is an officer's ability to require a suspect to submit to testing, without that person's consent or a reading of the implied consent law, so long as the officer has probable cause and the degree of force used is not excessive under the Fourth Amendment."[57]

In 1993, this Court noted in *State v. Maxwell* that it was first necessary to establish that there was probable cause to justify a non-consensual blood draw

---

[53] *See, e.g.*, *State v. Maxwell*, 624 A.2d 926, 931 (Del. 1993) (citing 21 *Del. C.* § 2740 for the proposition that the police could take a sample of the defendant's blood); *Seth*, 592 A.2d 436 (affirming conviction based on test conducted pursuant to the implied consent statute); *Brank v. State*, 528 A.2d 1185, 1189 (Del. 1987) ("[U]under Delaware law the police can require a suspect to submit to testing without that person's consent."); *Morrow v. State*, 303 A.2d 633, 635 (Del. 1973) ("[T]he Legislature, in providing for the taking of a blood sample from one who is incapable of refusing to take such test, a rational and fair procedure . . . .").
[54] 592 A.2d at 444.
[55] *Id.* at 438.
[56] *Id.*
[57] *Id.* at 444 (citing *South Dakota v. Neville*, 459 U.S. 553, 559 (1983); *Schmerber*, 384 U.S. 760 n.4 (1966)).

before its results would be admissible, consistent with the statute and the Fourth Amendment.[58] In 2008, the Superior Court remarked, "based on now well-settled precedent, the Court is satisfied that police officers may require DUI suspects to submit to chemical testing of their blood, even without consent, as long as 'the means and procedures employed . . . respect[ ] relevant Fourth Amendment standards of reasonableness.'"[59] In 2009, the Superior Court reiterated the same standard, this time holding that it did not amount to the unreasonable use of force to restrain a suspect's arm in order to perform a blood draw.[60]

**B.     The U.S. Supreme Court's Decision in *Missouri v. McNeely* Did Not Address Implied Consent Laws, and Does Not Suggest that Ours Is Invalid**

Without explicitly saying so, the Majority Opinion appears to embrace Flonnory's argument that the decision in *Missouri v. McNeely* rendered invalid the consent used to obtain his blood sample under Delaware's implied consent statute. But *McNeely* did not suggest that implied consent statutes such as § 2740 were an invalid basis to invoke the consent exception to the Fourth Amendment's warrant requirement. Instead, the case dealt with a precise and unrelated question: "whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement

---

[58] 624 A.2d at 928–29.

[59] *State v. Cardona*, 2008 WL 5206771, at *6 (Del. Super. Dec. 3, 2008) (citing *Schmerber*, 384 U.S. at 768 (1966)).

[60] *State v. Crespo*, 2009 WL 1037732, at *7–11 (Del. Super. Apr. 17, 2009).

for nonconsensual blood testing in drunk-driving investigations."[61] *McNeely* answered that specific question in the negative. Had the U.S. Supreme Court desired to invalidate a key feature of implied consent statutes that are on the books, in various shapes and forms, in all 50 states, I am confident the Court would have done so explicitly.[62] Instead, the Court seemed to cite such laws with approval:

> As an initial matter, States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.[63]

---

[61] *McNeely*, 133 S. Ct. at 1558; *see also id.* at 1569 (Kennedy, J., concurring) ("[The majority opinion] does not provide a framework where it is prudent to hold any more than that always dispensing with a warrant for a blood test when a driver is arrested for being under the influence of alcohol is inconsistent with the Fourth Amendment."); *id.* at 1574 (Roberts, C.J., concurring in part and dissenting in part) ("The question presented is whether a warrantless blood draw is permissible under the Fourth Amendment 'based upon the natural dissipation of alcohol in the bloodstream.' The majority answers 'It depends,' and so do I."); *id.* (Thomas, J., dissenting) ("This case requires the Court to decide whether the Fourth Amendment prohibits an officer from obtaining a blood sample without a warrant when there is probable cause to believe that a suspect has been driving under the influence of alcohol. Because the body's natural metabolization of alcohol inevitably destroys evidence of the crime, it constitutes an exigent circumstance. As a result, I would hold that a warrantless blood draw does not violate the Fourth Amendment.").

[62] *See id.* at 1568 ("[I]n drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant."); *id.* at 1569 (Kennedy, J., Concurring) ("States and other governmental entities which enforce the driving laws can adopt rules, procedures, and protocols that meet the reasonableness requirements of the Fourth Amendment and give helpful guidance to law enforcement officials. And this Court, in due course, may find it appropriate and necessary to consider a case permitting it to provide more guidance than it undertakes to give today.").

[63] *Id*. at 1566.

*McNeely* is best read plainly, as a case where the Court dealt with the question of whether probable cause to suspect a driver of DUI invariably justifies a warrantless search because blood alcohol content naturally decreases over time.

Delaware's implied consent statute rests on a separate exception to the warrant requirement, which *McNeely* did not address. A warrantless search is only reasonable—and thereby constitutional—when conducted under a recognized exception, including exigency.[64] But consent is also a valid exception to the warrant requirement.[65] For consent to be valid, it must be "freely and voluntarily given," determined by a totality of the circumstances.[66] But the person giving consent need not have made a knowing and intelligent decision to consent, and there is no duty on the part of the police to inform a suspect of the right to refuse or revoke consent.[67]

Under the plain language of § 2740, Flonnory was deemed to have consented to chemical testing of his blood to determine the presence of alcohol when he chose to operate a vehicle. Our implied consent statute simply attaches a

---

[64] *Cooke*, 977 A.2d at 855. An exigency exists when circumstances make "the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S. Ct. at 1558 (citing *Kentucky v. King,* 131 S. Ct. 1849, 1856 (2011)).

[65] *Schneckloth*, 412 U.S. at 222.

[66] *Id.* at 222, 227 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

[67] *Id.* at 235–37; *Cooke*, 977 A.2d at 855.

condition to a privilege that no one is required to exercise.[68] By making a decision to operate a vehicle on Delaware's roads, a driver is on notice by virtue of § 2740 (and the many other state laws to similar effect[69]) that he is consenting to a search if the circumstances that the statute outlines come to pass.[70]

Furthermore, the statute comes with important safeguards built in to ensure compliance with the Fourth Amendment. The statute makes explicit that the "normal rules of search and seizure law" apply to the admissibility of any evidence obtained.[71] Under § 2750, before any test results are admissible in a criminal proceeding, a judge must review whether the statutory preconditions are met;

---

[68] *Bowersox v. State*, 819 A.2d 301, 303–04 (Del. 2003) (characterizing driving as a "privilege"); *S.S. v. State*, 514 A.2d 1142, 1144 (Del. Super. 1986) ("[T]he privilege to operate a motor vehicle is not a fundamental right . . . .").

[69] *See, e.g.*, 21 *Del. C.* § 2614 (creating stricter implied consent requirements for holders of commercial drivers' licenses). Delaware's implied consent statutes that apply in this context have a corporate analogue that was suggested by the U.S. Supreme Court itself. Before 1977, under Delaware law, an individual wishing to sue non-resident directors of Delaware corporations in Delaware could bring a *quasi in rem* action against the directors' shares, which would result in "sequestration" of those shares, effectively seizing them until the directors submitted to the jurisdiction of the Delaware courts. In holding that this practice was unconstitutional, the Supreme Court suggested that a scheme in which consent to the jurisdiction of Delaware courts was made a condition to the acceptance of a position as a fiduciary of a Delaware corporation would pass constitutional muster. *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977). Section § 3114 of the Delaware General Corporation Law, which deems directors and certain officers who serve as fiduciaries of Delaware corporations to consent to being served with process and be subject to the personal jurisdiction of the Delaware courts for causes of action related to their service, was adopted in direct response to this suggestion. *See* 8 *Del. C.* § 3114.

[70] *See Seth*, 592 A.2d at 443 ("21 *Del. C.* § 2740 renders the operation of a motor vehicle a constructive consent of the operator to submit to testing for alcohol or drugs by an officer having 'probable cause to believe' the operator was in violation of . . . § 4177 or § 2742.").

[71] 21 *Del. C.* § 2750(a).

namely, that (1) the police officer in fact had probable cause,[72] (2) the test was conducted without the excessive use of force,[73] and (3) any blood test was conducted by a medical professional.[74] This independent judicial review serves to protect the rights of all drivers, because it limits any incentive for police officers to conduct searches when they do not believe in good faith that there is probable cause to suspect a driver is intoxicated. The statute's requirement that the State convince the court that the statutory conditions are met explains the reference to the "normal rules of search and seizure law" in § 2750, because it clarifies that regardless of implied consent, the test results are only admissible if a judge determines the conditions were satisfied and the search was thus constitutionally reasonable.

These preconditions are consistent with practices the U.S. Supreme Court has held constitute sufficient protections for a warrantless blood draw to be constitutional under the Fourth Amendment.[75] The results of a blood test are only admissible if a judge determines that there was probable cause to perform the

---

[72] *See* 21 *Del. C.* § 2740(a).
[73] *See* 21 *Del. C.* § 2742(a).
[74] 21 *Del. C.* § 2746.
[75] *McCann v. State*, 588 A.2d 1100, 1102 (Del. 1991) ("In *Schmerber*, the United States Supreme Court noted that the police were entitled to take blood from a suspected drunk driver without a warrant and based on probable cause unless the 'police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force.'"); *see also Schmerber*, 384 U.S. at 760 n.4; *Crespo*, 2009 WL 1037732, at *7 ("The constitutional analysis in blood extraction cases hinges on three prongs: (1) probable cause to believe a suspect is driving under the influence; (2) a search warrant or a recognized exception under the Fourth Amendment; and (3) reasonableness.").

blood draw and that the procedures used were "reasonable."[76] The requirements that no excessive force be used and that the test be conducted by a medical professional also ensure that the police respect the dignity of suspects.[77] In this way, the three conditions serve a "gate-keeping" function: any evidence obtained in violation of the Fourth Amendment will not be admissible at trial.

Here, it is not disputed that the police officer had probable cause to believe that Flonnory had been driving while under the influence of alcohol, nor is it disputed that the test was conducted without the use of force by a professional phlebotomist.[78] Thus, by operation of the implied consent statute, under the consent exception to the warrant requirement, the blood draw in this case complied with the Fourth Amendment.[79]

---

[76] *See* Wayne R. LaFave, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.2(a) (5th ed. 2014) ("But the Fourth Amendment does not prohibit all searches, only 'unreasonable' searches, and thus the police are able to acquire much physical evidence without the cooperation or consent of the suspect.").

[77] *See Rochin v. California*, 342 U.S. 165, 174 (1952) (finding inducing vomiting in suspect against his will amounted to "force so brutal and so offensive to human dignity" as to violate due process).

[78] *See Seth*, 592 A.2d at 444 ("The net effect of the amendments is an officer's ability to require a suspect to submit to testing, without that person's consent or a reading of the implied consent law, so long as the officer has probable cause and the degree of force used is not excessive under the Fourth Amendment.").

[79] *See id.* at 445 (holding that the implied consent statute permits warrantless chemical testing); *Wolf*, 164 A.2d at 868 (positing an implied consent statute would obviate the need for a warrant in most cases). Moreover, there is no dispute that Flonnory never attempted to withdraw his implied consent. We therefore have no reason to consider whether he could have done so after he was stopped by the officer, and the statutory circumstances in which he had impliedly consented had already come to pass (thus negating the utility of the statutory scheme). The facts of the record make plain that Flonnory never refused the test, and in fact voluntarily offered "a good vein" to the phlebotomist.

## C.  Other State Courts Have Also Considered the Effect of *McNeely*, But Few of These Decisions Provide Guidance Based on the Facts in This Case

Because, as the U.S. Supreme Court noted in *McNeely*, "all 50 States have adopted implied consent laws,"[80] we are not the first state court to consider these issues. Some courts have read *McNeely* to stand only for its express, narrow holding.[81] Others—some of which the Majority Opinion cites—have given it a broader reading based on what they believe it implies for issues the *McNeely* case never addressed.[82] But in nearly all of the cases where courts rejected the validity

---

[80] *McNeely*, 133 S. Ct. at 1556.

[81] For example, in a line of cases, including *McCoy v. North Dakota Department of Transportation*, 848 N.W.2d 659 (N.D. 2014), *State v. Smith*, 849 N.W.2d 599 (N.D. 2014), and *State v. Fletch*, 855 N.W.2d 389 (N.D. 2014), the North Dakota Supreme Court focused on the Court's holding in *McNeely*. The court noted, "[The U.S. Supreme Court] held the natural dissipation of alcohol in the bloodstream is not per se exigent circumstances justifying an exception to the warrant requirement for nonconsensual blood testing in all drunk-driving investigations. Consent, however, is another exception to the warrant requirement." *Fletch* at 392–93. Similarly, in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), Minnesota's Supreme Court also rejected a broad view of *McNeely*, quoting the decision's analysis of implied consent laws as appropriate "legal tools." The court remarked,

> As a threshold matter, Brooks's argument is inconsistent with the Supreme Court's discussion of implied consent laws in *McNeely*. As the Supreme Court recognized in *McNeely*, implied consent laws, which 'require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense,' are 'legal tools' states continue to have to enforce their drunk driving laws. The Court noted that these laws typically require suspected drunk drivers to take a test for the presence of alcohol and mandate that a driver's license will be revoked if they refuse a test. By using this 'legal tool' and revoking a driver's license for refusing a test, a state is doing the exact thing Brooks claims it cannot do—conditioning the privilege of driving on agreeing to a warrantless search.

*Id.* at 572 (internal citations omitted).

[82] *See e.g.*, *Aviles v. State*, 443 S.W.3d 291 (Tex. App. 2014) (holding mandatory blood draw without consideration of the "totality of the circumstances" violated the Fourth Amendment); *Weems v. State*, 434 S.W.3d 655 (Tex. App. 2014) (holding that, in the case of a suspect who had two previous DWI convictions and was in an accident involving injury to another person, both

of implied consent, the suspect actively refused or resisted a blood test.[83]  Those cases thus raise the question of whether statutory implied consent can be revoked *after* the conditions arise in which the driver has consented to be searched, an issue that we need not reach to decide this case.  Flonnory did not refuse the test or revoke his consent.  Faced with cases like Flonnory's, other state courts have read *McNeely* as it was written: assuming the nine Justices, in their separate opinions, made clear what they were addressing, and by implication of silence, what they were not addressing.[84]

We should do so here.  Our General Assembly has crafted an important statute to promote public safety.  That statute provides important efficiencies to law enforcement while providing substantive and procedural protections to

---

factors that supported a mandatory blood draw of suspect under the statutory scheme, the suspect's Fourth Amendment rights were violated by the mandatory blood draw).

[83] *See, e.g.*, *Byars v. State*, 336 P.3d 939 (Nev. 2014) (holding that the portion of Nevada's implied consent statute enabling an officer to use force to obtain a blood sample was unconstitutional); *State v. Wulff*, 337 P.3d 575 (Idaho 2014) (holding that courts must take a case by case approach to consent, hinging on the voluntariness of that consent under a totality of the circumstances test); *State v. Fierro*, 853 N.W.2d 235 (S.D. 2014) (holding that, when a suspect "verbally and physically refused to provide a sample," her "actions taken in their totality can hardly be taken as 'consent' by constitutional standards").  One possible exception is *State v. Butler*, 302 P.3d 609 (Ariz. 2013), but that case is distinguishable from Flonnory's in other respects.  Most importantly, Butler was a 16 year old high school student whose blood was drawn in the principal's office of his school.  The court held that under those circumstances, Butler could not be deemed to have voluntarily consented, "independent of" Arizona's implied consent statute.  *See id.*  Likewise, the Texas Court of Appeals' holding in *Aviles v. Texas* is also distinguishable.  Texas' statutory regime permitted a police officer to take a blood sample from a DWI suspect without a warrant if the officer had "credible information" that the suspect has been previously convicted of DWI at least twice.  *Aviles*, 443 S.W.3d at 291–92.  The court initially held that this provision, which has no analogue in Delaware's statutory scheme, was constitutional, but reversed after the U.S. Supreme Court vacated and remanded the judgment. *Id.* at 292.

[84] *See Fletch* at 392–93; *Brooks* at 572.

guarantee that drivers' constitutional rights are respected. We should decline to upset the long-standing statutory scheme by speculating that the U.S. Supreme Court meant to invalidate statutory implied consent as an exception to the warrant requirement silently, in a case where that issue was not presented, and any express words on the topic would have been dictum anyway.

As a result, I dissent and would affirm the Superior Court's judgment of conviction.