**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1505012252 |
| | ) | |
| SCOTT CULLEN | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM ORDER GRANTING
MOTION TO SUPPRESS**

Upon consideration of the Motion to Suppress Evidence (the "Motion") filed by Defendant Scott Cullen on November 3, 2015; the State's Response to Defendant's Motion to Suppress Evidence (the "Response") filed by the State of Delaware on December 18, 2015; the evidence provided by the parties at a hearing held on January 22, 2016 (the "Hearing"); and the arguments made by the parties at the Hearing held on the Motion and the Response,

## INTRODUCTION

This is a felony driving under the influence ("DUI") case. On August 31, 2015, the State of Delaware obtained an indictment against Mr. Cullen charging him with a DUI Fourth Offense.

The issue before the Court is rather narrow. Mr. Cullen filed the Motion, arguing that his blood test results should be suppressed because he was coerced by Corporal Michael Fiore of the Delaware State Police into consenting to a blood draw. The State opposes the Motion. In the Response, the State argues that Mr. Cullen knowingly, intelligently and voluntarily consented to the blood draw, even signing a consent form to that effect after Corporal Fiore explained the entire process.

**FACTS**[1]

On May 17, 2015, Corporal Fiore responded to the parking lot of Agrilla Brewing Company located on Kirkwood Highway in New Castle County. Upon arriving at the Agrilla Brewing Company, Corporal Fiore made contact with Mr. Cullen who appeared to be in some type of domestic dispute with his girlfriend.

Corporal Fiore believed that Mr. Cullen may have been driving while under the influence of alcohol. Corporal Fiore asked Mr. Cullen to perform certain NHTSA tests. Mr. Cullen refused to perform the tests. Corporal Fiore then asked Mr. Cullen to take a portable breath test or PBT. After Corporal Fiore showed Mr. Cullen the results of the PBT, Mr. Cullen admitted to drinking, stating that he had a "Cap and Coke" in his vehicle. Corporal Fiore then transported Mr. Cullen back to Troop 6.

Corporal Fiore testified that, while at Troop 6, he told Mr. Cullen that he wanted to obtain a blood draw from Mr. Cullen. Corporal Fiore explained the process and told Mr. Cullen that he could consent to the blood draw. Corporal Fiore also told Mr. Cullen that if Mr. Cullen did not consent to the blood draw then he would obtain a warrant for the blood draw from the Justice of the Peace Court.

At this point, Corporal Fiore testified that Mr. Cullen agreed to sign the consent form as he "just wanted to get out of there." Corporal Fiore then got Sergeant Etcheberry to come in to witness the signing of the consent form. Corporal Fiore again began to explain to Mr. Cullen that Mr. Cullen could consent or withhold his consent, but that if Mr. Cullen withheld his consent then Corporal Fiore intended to obtain the blood draw by "any means necessary." Corporal Fiore testified that he further explained that "any means necessary" meant obtaining a

---

[1] Unless otherwise noted, the facts are derived from the testimony of Corporal Fiore at the Hearing.

warrant for the blood draw and, if necessary, tying Mr. Cullen down and having the blood drawn. After this discussion, Mr. Cullen then executed the Delaware State Police Consent Form.[2]

Corporal Fiore testified that he did not believe he threatened Mr. Cullen in any way. Corporal Fiore stated that, when discussing the consent versus warrant process, he told Mr. Cullen about the process in a straightforward and unthreatening manner. Corporal Fiore said that he uses this same process when discussing the consent to blood draw process with any person he intends to obtain a blood draw from.

Corporal Fiore testified that Mr. Cullen was initially uncooperative in Agrilla Brewing Company's parking lot; however, Corporal Fiore stated that Mr. Cullen was mostly cooperative after taking the PBT. Moreover, Corporal Fiore said that Mr. Cullen was cooperative at Troop 6 and during the blood draw.

### ANALYSIS

The Fourth Amendment protects against "unreasonable searches and seizures."[3] Searches and seizures are *per se* unreasonable without a warrant, an exigent circumstance, or valid consent.[4] The United States Supreme Court held in *Missouri v. McNeely* that the police must have a warrant, exigency, or consent in a blood test case.[5] To determine whether a defendant voluntarily consented to a blood test, the Court must perform a Fourth Amendment totality of the circumstances analysis.[6] The Court must examine:

> [T]he totality of the circumstances surrounding the consent including (1) knowledge of the constitutional right to refuse consent; (2) age, intelligence, education, and language ability; (3) the degree to which the individual cooperates

---

[2] State Ex. 1.
[3] *Higgins v. State*, 89 A.3d 477, 2014 WL 1323387, at *2 (Del. 2014) (table) (quoting U.S. Const. Amend. IV).
[4] *Flonnory v. State*, 109 A.3d 1060, 1063 (Del. 2015).
[5] *Missouri v. McNeely*, 133 S. Ct. 1552 (2013); *Flonnory*, 109 A.3d at 1064.
[6] *Flonnory*, 109 A.3d at 1065; *Higgins*, 2014 WL 1323387, at *2.

with police; and (4) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior.[7]

The Delaware Supreme Court has provided some guidance on what "other coercive police behavior" is. In *Higgins v. State*, the Delaware Supreme Court held that it was not coercive for a police officer to inform a defendant that the defendant would lose his license if the defendant did not consent. The Court noted that there were no "veiled threats" in that case and no one told the defendant that the police officer could conduct the blood test without the defendant's consent.[8]

Delaware courts have also provided guidance on when the police may use force to conduct a legal blood test. In *State v. Cardona*, the Superior Court held that the police would use force to obtain a blood sample "in certain instances."[9] Though *McNeely* overturned the portions of the opinion on warrantless blood tests, *Cardona* contains an analysis that is still valid on whether the police may use force to obtain a blood sample.[10] The Court found that the police may use force—like holding down a person—if the force is reasonable.[11] To determine if the force was reasonable, the Court, while examining a totality of circumstances surrounding the consent, looks at (1) how severe the crime was, (2) whether the person was an immediate threat to the safety of the officers or others, (3) whether the person was resisting arrest or trying to flee;

---

[7] *Higgins*, 2014 WL 1323387, at *2.
[8] *Id.* In *Higgins*, the Court stated:
> First, informing [the defendant] of the consequences of refusal (loss of license) was not coercive. Indeed, 21 Del. C. § 2742(a), clearly permits police to inform a DUI suspect of that consequence. Second, [the officer]'s discussion of the seriousness of [the defendant's] conduct did not contain any veiled threats . . . . Neither [the officer] nor the phlebotomist represented that they had authority to draw [the defendant's] blood without his consent.

*Id.*
[9] *State v. Cardona*, 2008 WL 5206771, at *6 (Del. Super. Dec. 3, 2008).
[10] *McNeely*, 133 S.Ct.1552; *Cardona*, 2008 WL 5206771, at *6.
[11] *Cardona*, 2008 WL 5206771, at *6.

and (4) the physical characteristics of the person compared with the physical characteristics of the officers.[12]

In an earlier case, *McCann v. State*, the Delaware Supreme Court held that it was reasonable for the police to hold down the defendant's arm for a legal blood test under the circumstances of that case.[13] The defendant in *McCann* struggled with the police and hospital staff during the blood test and tried to bite a police officer.[14] In the same opinion, the *McCann* Court noted that the police should not use or threaten to use a stun gun to compel a blood test unless the defendant's physical aggression justified that force.[15] Specifically, the McCann Court stated:

> Our holding today, however, is not to be construed as authorizing the use of a stun gun, or the threat of such use, to compel submission to a blood test, *in the absence of physical aggression* on the part of a detainee which would otherwise independently justify such force.[16]

In sum, whether a police officer's use of force – or even the threat of the use of force – is reasonable depends heavily on the circumstances of the case. There is no one-size-fits-all rule for when force or the threat of force is permitted and reasonable.

The Court does not believe the relevant facts are that much in dispute here. Mr. Cullen has been arrested before and, therefore, has experience with the processes and procedures surrounding an arrest for a DUI. Mr. Cullen was born in 1966 and appears to understand English – *i.e.*, Mr. Cullen seemed to understand Corporal Fiore throughout the process and was otherwise alert and uninjured. Mr. Cullen does not seem to object to the length of the detention. Corporal Fiore testified that Mr. Cullen was cooperative – at least after Corporal Fiore administered the

---

[12] *Id.*
[13] *McCann v. State*, 588 A.2d 1100, 1102 (Del. 1991).
[14] *Id.* at 1101.
[15] *Id.* at 1102-03.
[16] *Id.* at 1102 (emphasis added).

PBT and then transported Mr. Cullen to Troop 6. The length of the detention was not overly long.

The problem with this case lies with Corporal Fiore's description of the consent process. Corporal Fiore told Mr. Cullen that he could consent to the blood draw, but that if Mr. Cullen did not consent to the blood draw then Corporal Fiore would obtain a warrant for the blood draw from the Justice of the Peace Court. When talking about what would happen if a warrant were obtained, Corporal Fiore went on to tell Mr. Cullen that the blood would be drawn through any means necessary, including tying Mr. Cullen down and forcibly conducting the blood test. The sole issue is whether Corporal Fiore's discussion of the warrant process constituted "use of physical punishment or other coercive police behavior."

The Court finds that, under the circumstances here, Mr. Cullen was coerced into giving his consent to the blood draw. It is true that if Corporal Fiore had a warrant AND Mr. Cullen had physically resisted the blood test, then Corporal Fiore could use reasonable force to draw Mr. Cullen's blood. That is not what happened in this case. There was no indication that Mr. Cullen would physically resist the blood test or act in a way that would justify reasonable force. The Court understands that Corporal Fiore uses the same description of the consent process with all persons he is seeking a blood draw; however, the Court does not understand the need to go into specifics about "any means necessary" when a person is cooperating. *McCann* makes it clear that it is improper to use force or threaten to use force to compel submission to a blood test in the absence of physical aggression.[17]

The Court holds that the use of "any means necessary" and talking about a forcible blood draw is threatening and coercive in this type of situation – where the detainee is cooperating and there would be no justifiable reason to threaten to use force or to actually use force in order to

---

[17] *Id.* at 1102 (emphasis added).

make the detainee submit to a blood draw. While it is true that, in certain circumstances, force can be used to draw blood after a warrant is obtained, the situation here did not indicate that force would be necessary. A situation "instinct with coercion – albeit colorably lawful coercion" creates a situation that negates consent.[18]

This does not mean that the Court would hold this way in all circumstances. The Court appreciates Corporal Fiore's professionalism. The Court found Corporal Fiore to be a credible witness. If a person is belligerent and/or uncooperative, a police officer may need to warn the person as to what will happen if a warrant is obtained and the person remains difficult. Moreover, the Court believes that, in most instances, a police officer telling a detainee that he can consent, or else the officer will seek to obtain a warrant for a blood draw, is appropriate. However, the Court believes that it is coercive to tell an otherwise cooperative detainee that the detainee can consent or a warrant will be obtained and, if the warrant is obtained, the officer will use any means necessary to draw the blood including restraining the detainee.

### CONCLUSION

For the above reasons, the Court will grant the Motion and suppress Mr. Cullen's blood test results.

 **IT IS HEREBY ORDERED** that the Motion is **GRANTED.**

Dated: February 9, 2016
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

---

[18] *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968).