THE STATE OF DELAWARE v. NATHAN SIPPLE WOLF.

*(October 26, 1960.)*

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*George R. Wright*, Deputy Attorney-General, for the State.

*Henry J. Ridgely* for Wolf.

Supreme Court of the State of Delaware, No. 15, 1960.

WOLCOTT, J.:

The following question has been certified to us by the Superior Court for Kent County:

"Is evidence of the results of a blood test made from a blood sample taken from a person who is unconscious admissible under the State Constitution in a criminal proceeding against such person when the person's unconsciousness is not the result of any action on the part of the authorities and when the blood sample is taken by a qualified physician employing acceptable medical procedures?"

The facts stated in the certification are that the defendant in the court below, who is charged with driving a motor vehicle under the influence of intoxicating liquor, was found unconscious at the scene of an automobile accident in which his vehicle had been involved. He was believed by the police to have been driving his automobile. In his unconscious condition he was taken in an ambulance to a hospital where, within two hours after the accident, at the request of the police, a blood sample was taken from his arm by a qualified physician who employed methods acceptable to the medical profession. At the time the defendant had not been placed under arrest. The blood sample was not taken by the physician as an incident of treatment of the unconscious defendant.

Thereafter, the blood sample was analyzed and showed a certain percentage of alcohol in the defendant's blood. Subsequently, approximately two weeks later, the defendant was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor.

The defendant filed a motion in the court below to suppress the results of the analysis of his blood sample on the ground that the taking of the blood sample was an illegal search and seizure of his person, in violation of Article I, § 6

of the Delaware Constitution, *Del. C. Ann.*, which provides, *inter alia*:

"The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; * * *."

The Superior Court thereupon certified to us the above quoted facts and question of law. We accepted the certification.

The question of admissibility into evidence of the result of the analysis of the blood sample taken from the arm of the defendant depends upon whether or not the evidence was legally obtained. If the evidence was obtained illegally, it is inadmissible in a criminal prosecution in the courts of this state. *Rickards v. State,* 6 *Terry* 573, 77 *A.* 2d 199. That case adopted for Delaware the so-called Federal exclusionary rule of illegally obtained evidence.

The defendant argues before us that the evidence of the analysis should be suppressed as inadmissible under the *Rickards* case because it was obtained in violation of Article I, § 6 of the Constitution and of 11 *Del. C.* §§ 2301 and 2303, which prohibit a search of a person in the absence of a warrant, without his consent, unless such search is made as an incident of a lawful arrest. The State takes the contrary position.

Such reported authority as there is dealing with the precise question presented to us—that is, the admissibility into evidence of an analysis of a blood sample taken from an unconscious person without a warrant who is at the time not under arrest—is, we think, not in conflict.

In *State v. Weltha,* 228 *Iowa* 519, 292 *N. W.* 148, 149, a conviction of manslaughter was reversed on appeal. In that case it appeared that the defendant was the operator of an automobile involved in an accident which caused the death.

He was taken from the scene of the accident in an unconscious condition to a hospital. There, at the request of the coroner, a blood sample was taken from his arm which, upon later analysis, showed an intoxicating amount of alcohol in his blood. It was held that the admission into evidence of the result of the analysis of the blood sample was reversible error. The court refused to countenance the taking "from an unconscious patient a blood sample to be used to make or sustain possible future criminal prosecution."

It is true that in the *Weltha* opinion the court refused to overrule its prior decision in *State v. Tonn*, 195 Iowa 94, 191 *N. W.* 530, which held proper the admission of the analysis of blood taken from a defendant without his consent but at a time he was under arrest. However, the court expressly stated that, if valid, the *Tonn* case was to be confined to its precise facts.

In *State v. Kroening*, 274 *Wis.* 266, 79 *N. W.* 2d 810, 815, 80 *N.W.* 2d 816, a prosecution for manslaughter occurring by reason of drunken driving was instituted. The trial court certified two questions concerning the admissibility into evidence of the analysis of a blood sample taken two hours after the accident from the defendant who, at the time, was in a semi-conscious state and had not given his consent. The first question was whether or not the taking of such a sample was a violation of the Wisconsin constitutional provision against self-incrimination. This question was answered in the negative.

The second question certified was whether or not the taking of the blood sample violated the Wisconsin constitutional provision against unreasonable search and seizure. This question was answered in the affirmative.

The court stated that under Wisconsin law the search of a person and his immediate surroundings as incident to a lawful arrest is legal and violates no constitutional provision.

The Wisconsin law, as does the Delaware law, prohibited the search of a person on suspicion that a crime had been committed. Search of the person must await the taking into custody under a warrant of arrest, or be an incident to a lawful arrest without a warrant.

The court pointed out that the Wisconsin Constitution granted immunity from unlawful search and stated that the granted immunity from unlawful search "is impaired if public officials may without consent and without arrest, stick needles into human bodies and draw off and carry away such of the body's contents as the officials determine expedient." The court further held that the fact of the arrest of the defendant some nine days later, presumably on the basis of the blood analysis, did not cure the initial lack of authority to make a search of the person of the defendant.

In *Lebel v. Swincicki*, 354 *Mich.* 427, 93 *N. W.* 2d 281, a civil action was instituted for wrongful death resulting from an automobile accident. The defendant was charged with having driven under the influence of intoxicating liquor and having caused the accident. A judgment was entered for the plaintiff from which the defendant appealed. The judgment on appeal was affirmed on the ground that there was other evidence to prove the intoxication of the defendant beyond an analysis of a blood sample taken from the defendant while he was unconscious. At the trial an objection was made to the admission into evidence of the analysis of the blood sample. The ground urged was that the taking of the sample was a violation of the Michigan constitutional provision against unreasonable searches and seizures.

The court stated that the admission into evidence of an analysis of blood taken from a defendant in an unconscious state would be inadmissible in a criminal prosecution as a violation of the Michigan constitutional provision against unreasonable search and seizure and that there was no dif-

ference in principle between the exclusion of such evidence in a criminal prosecution and the exclusion of such evidence in a civil action. It was, accordingly, held that the admission into evidence of the analysis was error but, under the other circumstances of the case, the judgment was affirmed.

In *Breithaupt v. Abram*, 352 *U. S.* 432, 77 *S. Ct.* 408, 1 *L. Ed.* 2d 448, a person convicted of manslaughter in New Mexico arising from his having caused an accident while driving a motor vehicle under the influence of intoxicating liquor, instituted a petition for habeas corpus in the Supreme Court of New Mexico on the ground that the admission into evidence of the analysis of the blood sample withdrawn from him while he was unconscious was a violation of the due process clause of the Fourteenth Amendment. Since the State of New Mexico does not follow the rule of evidence excluding in criminal prosecutions illegally obtained evidence, and since no force was used in the taking of the blood sample in a measure that shocked the conscience or offended a sense of justice, the Supreme Court of the United States affirmed the denial of the petition for a writ of habeas corpus. The court, however, said that the taking of blood from an unconscious person was a violation of the Fourth Amendment to the Federal Constitution prohibiting unreasonable searches and seizures which would have required the exclusion of such evidence in a prosecution in the Federal criminal courts, but since New Mexico did not apply the exclusionary rule it was not a violation of due process of law.

We think these authorities fairly illustrate the rule applied by the courts of those states following the so-called exclusionary rule of evidence when the offer of evidence is an analysis of a blood sample taken from an unconscious defendant not then under arrest. We are of the opinion that these cases properly reflect the law not only under the Constitutions of those states whose cases have been cited, but under Article I, § 6 of the Delaware Constitution.

The State cites in opposition *People v. Duroncelay, Cal. App.*, 303 *P.* 2d 617. In that case a defendant was convicted of driving under the influence of intoxicating liquor. He had an accident. He was thereafter taken to a hospital. The officers noticed a strong odor of alcohol in his car. The floor of his car was strewn with beer cans. On arrival at the hospital the defendant vomited, producing a strong odor of alcohol. Thereafter, in the hospital a blood sample was taken from the defendant whose consent was not obtained. No force was used to obtain the sample.

Under the circumstances, the evidence was held to be properly obtained as the result of a reasonable search made as an incident to a lawful arrest since, under the circumstances, there were more than reasonable grounds for arresting the defendant upon the charge of which he was later convicted.

The *Duroncelay* case, we think, is not apposite to the one before us, since it seems to be a case of a lawful arrest following which the blood sample was taken as an incident to that arrest. This, we think, distinguishes the *Duroncelay* case from the one before us.

In conclusion, we think it not amiss to observe that the result of the exclusion from evidence of the results of a blood analysis obtained under the circumstances set forth might possibly work a hardship upon the police in enforcing safety upon the highways in this State. If this be the result, it springs from the policy of the law of Delaware which prohibits the admission of illegally obtained evidence. We have no doubt that in the present state of the law the evidence in the case before us was illegally obtained. We therefore have no choice but to uphold its exclusion from evidence in a subsequent prosecution.

However, we point out that the State is not helpless to remedy this situation. We can see no reason why the State, in the exercise of its police power in licensing drivers to oper-

ate vehicles upon the highways of this State, cannot, by statute, impose as a condition to obtaining such a license that, by his acceptance of a license to drive, the applicant shall be deemed to have given his consent to submit to chemical analysis of his body fluids for the purpose of determining the alcoholic content of his blood. At least one state has so provided. See *Kan. Gen. Stat.* 1949, *Supp.* 1955, § 8-1001 through § 8-1007.

We suggest to the General Assembly the consideration of such a statute.

The question certified to us must be answered in the negative.