STRINE, Chief Justice,
dissenting:
I respectfully dissent. In my view, the Superior Court grappled correctly with the precise question presented to it by the parties below: whether the U.S. Supreme Court’s decision in Missouri v. McNeely[39] rendered Delaware’s statutory implied *1067 consent statute invalid. After receiving supplemental briefs on that issue, the Superior Court determined that the Supreme Court in McNeely only addressed the question properly before it, namely “whether the natural dissipation of alcohol in the bloodstream establishes a per se exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations.”[40] The Superior Court concluded that McNeely did not speak to the separate question of whether the consent exception to the Fourth Amendment was satisfied by statutes like Delaware’s. Indeed, the Superior Court noted .that to the extent the Court discussed implied consent statutes-which exist in some form in every state — it seemed to cite them with approval: “The Court did not make any specific rulings about Missouri’s implied consent statute; instead, the Court acknowledged that implied consent statutes are among the ‘broad range of legal tools [States have] to enforce their drunk-driving laws and to secure BAC evidence without undertaking nonconsensual blood draws.’ ”[41] The Superior Court thus adhered to this Court’s prior decisions holding that Delaware’s implied consent statute was consistent with the Fourth Amendment and that the implied consent Flonnory gave by exercising the privilege of driving was valid.[42] In holding that the results of the blood search were admissible in evidence, the Superior Court made the required finding under the statute that the officer who arrested Flonnory had probable cause to believe that he had committed a DUI[43]
On appeal, the parties joined issue on the question that divided them below. Their briefs took different positions on the effect of McNeely, with the State trying to introduce for the first time the alternative argument that Flonnory actually consented to the blood draw. After oral argument, we invited supplemental submissions on the reading given to McNeely by other state courts.
With this central question having been exhaustively addressed by the parties and of interest to our law enforcement community, my colleagues have assumed for the sake of decision that McNeely silently invalidated our state’s long-standing implied consent statute. They then reverse the Superior Court’s judgment without explaining how it made an error, and remand for it to make a determination that the parties never previously requested it to make. Both parties will be surprised by the Majority Opinion, which does not address the issue that the parties argued before the Superior Court or on appeal.
Because I believe Delaware’s statutory implied consent statute has safeguards that ensure its reasonable operation consistent with the Fourth Amendment, I dissent. I fear that assuming that McNeely undid reasonable implied consent regimes like Delaware’s that were operating for many years without any indication of being abused will work no increase in liberty from unreasonable searches, but simply burden police officers and courts with the need to secure a large number of warrants, taking scarce police and judicial time away *1068 from other matters. Like the Superior Court, I decline to guess that McNeely silently proposed a costly solution to a problem that no one had identified as even existing.
Missouri v. McNeely addressed a separate, precise question that is not relevant for our purposes in this case. This Court has recognized the constitutionality of the implied consent statute on multiple occasions, because it relies on a recognized exception to the warrant requirement— consent — and has substantial procedural protections that make the admission of evidence contingent on a judicial finding that the search otherwise complied with the Fourth Amendment. When a person chooses to exercise the privilege to which the consent attaches, i.e., driving on our roads, the statute deems that person to have consented to a search, so long as the statutory precautions are satisfied. McNeely did not alter that analysis, because it did not address the long-standing consent exception to the warrant requirement.[44] Rather, as the Superior Court in this case determined based on the language of the opinion itself, McNeely solely focused on the separate exigency exception to the warrant requirement.
As we have held on numerous occasions, our statutory scheme is constitutional because it simply attaches a condition to a privilege that no one is required to exercise, which is a permissible legislative determination. The statutory regime also includes substantial safeguards, including the requirement that a judge find that probable cause existed, before the results of a search can be admitted into evidence.
A. We Have Held Delaware’s Implied Consent Statute to Be Consistent with the Fourth Amendment on Numerous Occasions
In 1960, this Court held in State v. Wolf that drawing blood from a person suspected of driving while intoxicated, when that person could not consent, constituted an illegal search.[45] In Wolf, the suspect was unconscious, but the police nevertheless drew and tested his blood.[46] This Court recognized the difficulty its holding would create for the police, and suggested that the General Assembly could remedy the problem by enacting a law deeming those who chose to drive on Delaware’s roads to have consented to blood tests, if there was reason to suspect them of driving under the influence.[47] The General Assembly responded by passing an implied consent statute. The modern form of the statute, 21 Del. C. § 2740 et seq., states that:
Any person who drives, operates or has in actual physical control a vehicle ... shall be deemed to have given consent ... to a chemical test or tests of that person’s blood, breath and/or urine for the purpose of determining the presence of alcohol or a drug or drugs. The testing may be required of a person when an officer has probable cause to believe the person was driving, operating or in physical control of a vehicle [while intoxicated].[48]
Under the original version of the statute, an officer could not perform the test if the suspect refused. But the General Assembly amended the statute in 1983 to *1069 provide that the police may perform tests over a suspect’s objections in certain circumstances.[49] Section 2742 states:
If a person refuses to permit chemical testing, after being informed of the penalty of revocation for such refusal, the test shall not be given but the police officer shall report the refusal to the Department. The police officer may, however, take reasonable steps to conduct such chemical testing even without the consent of the person if the officer seeks to conduct such test or tests without informing the person of the penalty of revocation for such refusal and thereby invoking the implied consent law.[50]
Section 2750 further provides:
[T]he court shall admit the results of a chemical test of the person’s breath, blood or urine according to normal rules of search and seizure law. The informing or failure to inform the accused concerning the implied consent law shall not affect the admissibility of such results in any case, including a prosecution for a violation of § 4177 or this title.[51]
To put it plainly, in accordance with the statutory scheme, police officers in Delaware, like Yogi Berra, come to and must take a proverbial “fork in the road” when they encounter a driver who they have probable cause to believe is under the influence of alcohol. Under § 2742, a police officer may:
(1) inform the suspect of the administrative penalties that will ensue for refusing to submit to chemical testing; if the suspect does refuse, the officer cannot then perform the test; or
(2) decline to inform the suspect of the implied consent statute, and perform chemical tests even without explicit consent, provided the amount of force used is not excessive and any blood test is performed by a medical professional.[52]
This has been the law in Delaware for the past three decades, and we have recognized the validity of the implied consent scheme crafted by the General Assembly on numerous occasions.[53] We held in 1991 in Seth v. State that the implied consent statute gave the police the right to perform chemical testing on individuals they *1070 had probable cause to suspect had been driving while intoxicated, regardless of their actual consent.[54] In Seth, the suspect was arrested on probable cause of DUI, and initially refused to submit to an intoxilyzer.[55] The police officer did not inform him of the implied consent law, and after several minutes, the suspect submitted to the test.[56] The Court held that the suspect’s actual consent was immaterial, and noted, “The net effect of the [1983] amendments is an officer’s ability to require a suspect to submit to testing, without that person’s consent or a reading of the implied consent law, so long as the officér has probable cause and the degree of force used is not excessive under the Fourth Amendment.”[57]
In 1993, this Court noted in State v. Maxwell that it was first necessary to establish that there was probable cause to justify a non-consensual blood draw before its results would be admissible, consistent with the statute and the Fourth Amendment.[58] In 2008, the Superior Court remarked, “based on now well-settled precedent, the Court is satisfied that police officers may require DUI suspects to submit to chemical testing of their blood, even without consent, as long as ‘the means and procedures employed ... respect[ ] relevant Fourth Amendment standards of reasonableness.’ ”[59] In 2009, the Superior Court reiterated the same standard, this time holding that it did not amount to the unreasonable use of force to restrain a suspect’s arm in order to perform a blood draw.[60]
B. The U.S. Supreme Court’s Decision in Missouri v. McNeely Did Not Address Implied Consent Laws, and Does Not Suggest that Ours Is Invalid
Without explicitly saying so, the Majority Opinion appears to embrace Flonnory’s argument that the decision in Missouri v. McNeely rendered invalid the consent used to obtain his blood sample under Delaware’s implied consent statute. But McNeely did not suggest that implied consent statutes such as § 2740 were an invalid basis to invoke the consent exception to the Fourth Amendment’s warrant requirement. Instead, the case dealt with a precise and unrelated question: “whether the natural dissipation of alcohol in the bloodstream establishes a per se exigency that suffices on its own to justify an exception to the warrant requirement for nonconsen-sual blood testing in drunk-driving investigations.”[61] McNeely answered that spe- *1071 cifie question in the negative. Had the U.S. Supreme Court desired to invalidate a key feature of implied consent statutes that are on the books, in various shapes and forms, in all 50 states, I am confident the Court would have done so explicitly.[62] Instead, the Court seemed to cite such laws with approval:
As an initial matter, States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrant-less nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.[63]
McNeely is best read plainly, as a case where the Court dealt with the question of whether probable cause to suspect a driver of DUI invariably justifies a warrantless search because blood alcohol content naturally decreases over time.
Delaware’s implied consent statute rests on a separate exception to the warrant requirement, which McNeely did not address. A warrantless search is only reasonable — and thereby constitutional— when conducted under a recognized exception, including exigency.[64] But consent is also a valid exception to the warrant requirement.[65] For consent to be valid, it must be “freely and voluntarily given,” determined by a totality of the circumstances.[66] But the person giving consent need not have made a knowing and intelligent decision to consent, and there is no duty on the part of the police to inform a suspect of the right to refuse or revoke consent.[67]
Under the plain language of § 2740, Flonnory was deemed to have consented to chemical testing of his blood to determine the presence of alcohol when he chose to operate a vehicle. Our implied consent statute simply attaches a condition to a privilege that no one is required to exercise.[68] By making a decision to operate a *1072 vehicle on Delaware’s roads, a driver is on notice by virtue of § 2740 (and the many other state laws to similar effect[69]) that he is consenting to a search if the circumstances that the statute outlines come to pass.[70]
Furthermore, the statute comes with important safeguards built in to ensure compliance with the Fourth Amendment. The statute makes explicit that the “normal rules of search and seizure law” apply to the admissibility of any evidence obtained.[71] Under § 2750, before any test results are admissible in a criminal proceeding, a judge must review whether the statutory preconditions are met; namely, that (1) the police officer in fact had probable cause,[72] (2) the test was conducted without the excessive use of force,[73] and (3) any blood test was conducted by a medical professional[74] This independent judicial review serves to protect the rights of all drivers, because it limits any incentive for police officers to conduct searches when they do not believe in good faith that there is probable cause to suspect a driver is intoxicated. The statute’s requirement that the State convince the court that the statutory conditions are met explains the reference to the “normal rules of search and seizure law” in § 2750, because it clarifies that regardless of implied consent, the test results are only admissible if a judge determines the conditions were satisfied and the search was thus constitutionally reasonable.
These preconditions are consistent with practices the U.S. Supreme Court has held constitute sufficient protections for a war-rantless blood draw to be constitutional under the Fourth Amendment.[75] The re- *1073 suits of a blood test are only admissible if a judge determines that there was probable cause to perform the blood draw and that the procedures used were “reasonable.” [76] The requirements that no excessive force be used and that the test be conducted by a medical professional also ensure that the police respect the dignity of suspects.[77] In this way, the three conditions serve a “gate-keeping” function: any evidence obtained in violation of the Fourth Amendment will not be admissible at trial.
Here, it is not disputed that the police officer had probable cause to believe that Flonnory had been driving while under the influence of alcohol, nor is it disputed that the test was conducted without the use of force by a professional phlebotomist.[78] Thus, by operation of the implied consent statute, under the consent exception to the warrant requirement, the blood draw in this case complied with the Fourth Amendment.[79]
C. Other State Courts Have Also Considered the Effect of McNeely, But Few of These Decisions Provide Guidance Based on the Facts in This Case
Because, as the U.S. Supreme Court noted in McNeely, “all 50 States have adopted implied consent laws,”[80] we are not the first state court to consider these issues. Some courts have read McNeely to stand only for its express, narrow holding.[81] Others — some of which the Majori *1074 ty Opinion cites — have given it a broader reading based on what they believe it implies for issues the McNeely case never addressed.[82] But in nearly all of the cases where courts rejected the validity of implied consent, the suspect actively refused or resisted a blood test.[83] Those cases thus raise the question of whether statutory implied consent can be revoked after the conditions arise in which the driver has consented to be searched, an issue that we need not reach to decide this case. Flon-nory did not refuse the test or revoke his consent. Faced with cases like Flonnory’s, other state courts have read McNeely as it was written: assuming the nine Justices, in their separate opinions, made clear what they were addressing, and by implication of silence, what they were not addressing.[84]
We should do so here. Our General Assembly has crafted an important statute to promote public safety. That statute provides important efficiencies to law enforcement while providing substantive and procedural protections to guarantee that drivers’ constitutional rights are respected. *1075 We should decline to upset the long-standing statutory scheme by speculating that the U.S. Supreme Court meant to invalidate statutory implied consent as an exception to the warrant requirement silently, in a case where that issue was not presented, and any express words on the topic would have been dictum anyway.
As a result, I dissent and would affirm the Superior Court’s judgment of conviction.

. - U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

. Flonnory, 2013 WL 3327526, at *6 (quoting McNeely, 133 S.Ct. at 1558).

. Id. (quoting McNeely, 133 S.Ct. at 1566).

. Id. ("The Supreme Court’s holding in McNeely does not alter the application of Delaware's Implied Consent Statutes to the facts of this case.... Therefore, McNeely does not affect this Court's finding that the results from the blood sample are admissible pursuant to the consent exception to the warrant requirement.”).

.Id. at *7.

. South Dakota v. Neville, 459 U.S. 553, 559, 564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (acknowledging implied consent law did not violate the Fourth or Fifth Amendments).

. State v. Wolf, 164 A.2d 865, 868 (Del.1960).

. Id.

. Id.

.21 Del. C. § 2740(a).

. Seth v. State, 592 A.2d 436, 443-44 (Del.1991).

. (emphasis added).

. (emphasis added).

. 21 Del. C. § 2742. The Majority Opinion relies on Higgins v. State for the proposition that the totality of the circumstances test is required in all circumstances in which a suspect’s blood is tested without a warrant, notwithstanding the implied consent statute. 2014 WL 1323387 (Del. Apr. 1, 2014). But the Majority Opinion fails to grapple with the distinction in the statutory scheme between police officers who have informed suspects of the right to refuse and those who have not. In Higgins’ case, the officer did inform him of the penalties for failure to comply, and Higgins’ argument rested on the premise that doing so was "coercive." Id. at *2. That case, in which there was no discussion of implied consent or § 2740 at all, thus does not aid the Majority Opinion’s contentions in this case, in which Flonnory was not informed of his right to refuse or the administrative penalties for doing so.

.See, e.g., State v. Maxwell, 624 A.2d 926, 931 (Del.1993) (citing 21 Del. C. § 2740 for the proposition that the police could take a sample of the defendant's blood); Seth, 592 A.2d 436 (affirming conviction based on test conducted pursuant to the implied consent statute); Brank v. State, 528 A.2d 1185, 1189 (Del.1987) ("[U]nder Delaware law the police can require a suspect to submit to testing without that person’s consent.”); Morrow v. State, 303 A.2d 633, 635 (Del.1973) (”[T]he Legislature, in providing for the taking of a blood sample from one who is incapable of refusing to take such test, a rational and fair procedure_”).

. 592 A.2d at 444.

. Id. at 438.

. Id.

. Id. at 444 (citing South Dakota v. Neville, 459 U.S. 553, 559, 103 S.Ct 916, 74 L.Ed.2d 748 (1983); Schmerber, 384 U.S. at 760 n. 4, 86 S.Ct. 1826(1966)).

. 624 A.2d at 928-29.

. State v. Cardona, 2008 WL 5206771, at *6 (Del.Super. Dec. 3, 2008) (citing Schmerber, 384 U.S. at 768, 86 S.Ct. 1826 (1966)).

. State v. Crespo, 2009 WL 1037732, at *7-11 (Del.Super. Apr. 17, 2009).

. McNeely, 133 S.Ct. at 1558; see also id. at 1569 (Kennedy, J., concurring) ("[The majority opinion] does not provide a framework where it is prudent to hold any more than that always dispensing with a warrant for a blood test when a driver is arrested for being under the influence of alcohol is inconsistent with the Fourth Amendment.”); id. at 1574 (Roberts, C.J., concurring in part and dissenting in part) ("The question presented is whether a warrantless blood draw is permissible under the Fourth Amendment ‘based upon the natural dissipation of alcohol in the bloodstream.' The majority answers ‘It depends,' and so do I."); id. (Thomas, J., dissenting) ("This case requires the Court to decide whether the Fourth Amendment prohibits an officer from obtaining a blood sam- *1071 pie without a warrant when there is probable cause to believe that a suspect has been driving under the influence of alcohol. Because the body's natural metabolization of alcohol inevitably destroys evidence of the crime, it constitutes an exigent circumstance. As a result, I would hold that a warrantless blood draw does not violate the Fourth Amendment.”).

.See id. at 1568 ("[I]n drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.”); id. at 1569 (Kennedy, J., Concurring) ("States and other governmental entities which enforce the driving laws can adopt rules, procedures, and protocols that meet the reasonableness requirements of the Fourth Amendment and give helpful guidance to law enforcement officials. And this Court, in due course, may find it appropriate and necessary to consider a case permitting it to provide more guidance than it undertakes to give today.”).

. Id. at 1566.

. Cooke, 977 A.2d at 855. An exigency exists when circumstances make "the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.” McNeely, 133 S.Ct. at 1558 (citing Kentucky v. King, - U.S. -, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011)).

. Schneckloth, 412 U.S. at 222, 93 S.Ct. 2041.

. Id. at 222, 227, 93 S.Ct. 2041 (citing Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)).

. Id. at 235-37, 93 S.Ct. 2041; Cooke, 977 A.2d at 855.

. Bowersox v. State, 819 A.2d 301, 303-04 (Del.2003) (characterizing driving as a "privilege”); S.S. v. State, 514 A.2d 1142, 1144 (Del.Super.1986) (“[T]he privilege to operate *1072 a motor vehicle is not a fundamental right-”).

.See, e.g., 21 Del. C. § 2614 (creating stricter implied consent requirements for holders of commercial drivers’ licenses). Delaware's implied consent statutes that apply in this context have a corporate analogue that was suggested by the U.S. Supreme Court itself. Before 1977, under Delaware law, an individual wishing to sue non-resident directors of Delaware corporations in Delaware could bring a quasi in rem action against the directors' shares, which would result in "sequestration” of those shares, effectively seizing them until the directors submitted to the jurisdiction of the Delaware courts. In hold- . ing that this practice was unconstitutional, the Supreme Court suggested that a scheme in which consent to the jurisdiction of Delaware courts was made a condition to the acceptance of a position as a fiduciary of a Delaware corporation would pass constitutional muster. Shaffer v. Heitner, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Section § 3114 of the Delaware General Corporation Law, which deems directors and certain officers who serve as fiduciaries of Delaware corporations to consent to being served with process and be subject to the personal jurisdiction of the Delaware courts for causes of action related to their service, was adopted in direct response to this suggestion. See 8 Del. C. § 3114.

. See Seth, 592 A.2d at 443 ("21 Del. C. § 2740 renders the operation of a motor vehicle a constructive consent of the operator to submit to testing for alcohol or drugs by an officer having ‘probable cause to believe’ the operator was in violation of ... § 4177 or § 2742.”).

. 21 Del. C. § 2750(a).

. See 21 Del. C. § 2740(a).

. See 21 Del. C. § 2742(a).

. 21 Del. C. § 2746.

. McCann v. State, 588 A.2d 1100, 1102 (Del.1991) ("In Schmerher, the United States Supreme Court noted that the police were entitled to take blood from a suspected drunk driver without a warrant and based on probable cause unless the 'police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force."); see also Schmerber, 384 U.S. at 760 n. 4, 86 S.Ct. 1826; Crespo, 2009 WL 1037732, at *7 ("The constitutional analysis *1073 in blood extraction cases hinges on three prongs: (1) probable cause to believe a suspect is driving under the influence; (2) a search warrant or a recognized exception under the Fourth Amendment; and (3) reasonableness.”).

. See Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 8.2(a) (5th ed. 2014) (“But the Fourth Amendment does not prohibit all searches, only ‘unreasonable’ searches, and thus the police are able to acquire much physical evidence without the cooperation or consent of the suspect.”).

. See Rochin v. California, 342 U.S. 165, 174, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (finding inducing vomiting in suspect against his will amounted to "force so brutal and so offensive to human dignity” as to violate due process).

. See Seth, 592 A.2d at 444 ("The net effect of the amendments is an officer’s ability to require a suspect to submit to testing, without that person’s consent or a reading of the implied consent law, so long as the officer has probable cause and the degree of force used is not excessive under the Fourth Amendment.”).

. See id. at 445 (holding that the implied consent statute permits warrantless chemical testing); Wolf, 164 A.2d at 868 (positing an implied consent statute would obviate the need for a warrant in most cases). Moreover, there is no dispute that Flonnory never attempted to withdraw his implied consent. We therefore have no reason to consider whether he could have done so after he was stopped by the officer, and the statutory circumstances in which he had impliedly consented had already come to pass (thus negating the utility of the statutory scheme). The facts of the record make plain that Flonnory never refused the test, and in fact voluntarily offered "a good vein” to the phlebotomist.

. McNeely, 133 S.Ct. at 1556.

. For example, in a line of cases, including McCoy v. North Dakota Department of Transportation, 848 N.W.2d 659 (N.D.2014), State v. Smith, 849 N.W.2d 599 (N.D.2014), and State v. Fetch, 855 N.W.2d 389 (N.D.2014), the North Dakota Supreme Court focused on the Court's holding in McNeely. The court noted, "[The U.S. Supreme Court] held the natural dissipation of alcohol in the bloodstream is not per se exigent circumstances justifying an exception to the warrant requirement for nonconsensual blood testing in all drunk-driving investigations. Consent, however, is another exception to the warrant requirement.” Fletch at 392-93. Similarly, in State v. Brooks, 838 N.W.2d 563 (Minn.2013), Minnesota’s Supreme Court also rejected a broad view of McNeely, quoting the decision’s *1074 analysis of implied consent laws as appropriate “legal tools.” The court remarked,
As a threshold matter, Brooks’s argument is inconsistent with the Supreme Court's discussion of implied consent laws in McNeely. As the Supreme Court recognized in McNeely, implied consent laws, which 'require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense,' are ‘legal tools’ states continue to have to enforce their drunk driving laws. The Court noted that these laws typically require suspected drunk drivers to take a test for the presence of alcohol and mandate that a driver’s license will be revoked if they refuse a test. By using this 'legal tool’ and revoking a driver’s license for refusing a test, a state is doing the exact thing Brooks claims it cannot do — conditioning the privilege of driving on agreeing to a warrantless search.
Id. at 572 (internal citations omitted).

.See e.g., Aviles v. State, 443 S.W.3d 291 (Tex.App.2014) (holding mandatory blood draw without consideration of the "totality of the circumstances” violated the Fourth Amendment); Weems v. State, 434 S.W.3d 655 (Tex.App.2014) (holding that, in the case of a suspect who had two previous DWI convictions and was in an accident involving injury to another person, both factors that supported a mandatory blood draw of suspect under the statutory scheme, the suspect's Fourth Amendment rights were violated by the mandatory blood draw).

. See, e.g., Byars v. State, 336 P.3d 939 (Nev.2014) (holding that the portion of Nevada’s implied consent statute enabling an officer to use force to obtain a blood sample was unconstitutional); State v. Wulff, 157 Idaho 416, 337 P.3d 575 (2014) (holding that courts must take a case by case approach to consent, hinging on the voluntariness of that consent under a totality of the circumstances test); State v. Fierro, 853 N.W.2d 235 (S.D.2014) (holding that, when a suspect "verbally and physically refused to provide a sample,” her "actions taken in their totality can hardly be taken as ‘consent’ by constitutional standards”). One possible exception is State v. Butler, 232 Ariz. 84, 302 P.3d 609 (2013), but that case is distinguishable from Flonnory’s in other respects. Most importantly, Butler was a 16 year old high school student whose blood was drawn in the principal’s office of his school. The court held that under those circumstances, Butler could not be deemed to have voluntarily consented, "independent of” Arizona’s implied consent statute. See id. Likewise, the Texas Court of Appeals’ holding in Aviles v. State is also distinguishable. Texas’ statutory regime permitted a police officer to take a blood sample from a DWI suspect without a warrant if the officer had "credible information” that the suspect has been previously convicted of DWI at least twice. Aviles, 443 S.W.3d at 291-92. The court initially held that this provision, which has no analogue in Delaware’s statutory scheme, was constitutional, but reversed after the U.S. Supreme Court vacated and remanded the judgment. Id. at 292.

. See Fletch at 392-93; Brooks at 572.